Amanda MEADOR, Serah Meador, and
Tabetha Meador, Plaintiffs–Appellants,

v.

CABINET FOR HUMAN RESOURCES,
Marian McKinney, and John Hoyle,
Defendants–Appellees.

No. 89–5530.

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs April 5, 1990.

Decided May 8, 1990.

Rehearing and Rehearing En Banc Denied
June 21, 1990.

William Yesowitch, Frockt & Klingman, Louisville, Ky., David Lynn Meador, Bowling Green, Ky., Steven A. Snow, Gersh Law Offices, Louisville, Ky., for plaintiffs-appellants.

Ryan M. Halloran, General Counsel, Trisha Zeller James, Cabinet for Human Resources, Office of the Counsel, Frankfort, Ky., for defendants-appellees.

Before MARTIN and JONES, Circuit Judges, and FEIKENS, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellants, Amanda Meador, Serah Meador, and Tabetha Meador, appeal from the order dismissing their 42 U.S.C. § 1983 (1982) civil rights case. For the following reasons, we reverse and remand.

---

* The Honorable John Feikens, Senior United States District Judge of the Eastern District of Michigan, sitting by designation.

## I.

David Meador ("Meador"), father of the three children, and his wife, Jana Meador, were divorced on June 28, 1985. Meador was to relinquish custody of his three daughters to Jana on December 9, 1985. When Jana could not be located, Meador gave the children to their grandparents to take care of them. On December 11, 1985, Gordon Meador, the natural grandfather of the children, took them to the Bowling Green Police Department. The police then delivered the children to defendant-appellee, the Cabinet for Human Resources ("Cabinet"), the Kentucky state agency responsible for the care of children abandoned by their parents. That same day, Sandy Allnut, the agency worker assigned to this case, placed the children in the Douglas Foster Home. On March 11, 1986, the children were found to have been sexually abused.

On November 4, 1987, Meador filed a *pro se* complaint in the United States District Court for the Western District of Kentucky, alleging a violation of 42 U.S.C. § 1983. On May 25, 1988, the court dismissed the complaint due to lack of standing and failure to state a claim. *Meador v. Cabinet for Human Resources*, No. C–87–0165–BG(M). On November 15, 1988, the Sixth Circuit affirmed the dismissal on the grounds of lack of standing (No. 88–5613/14) (Rule 9) (per curiam). Meador again filed suit on November 21, 1988, this time *on behalf of* his daughters. Meador alleges that Allnut knew of a previous report of sexual abuse at the Douglas Foster Home yet refused to act on it. Specifically, Meador alleges that Shannon Contrell was removed from the Home prior to December 11, 1985 due to sexual abuse by Billy Douglas, the foster father. In addition, on February 24, 1985, Margaret Douglas, the foster mother, reported to Allnut that the Meador children were at risk of abuse in that home. On this basis, Meador charges that defendants-appellees—the Cabinet; Marian McKinney, foster home supervisor; and John Hoyle, intake supervisor—demonstrated "deliberate indifference" to the known risk of injury to the Meador children, in violation of their due process rights.

On March 31, 1989, United States Magistrate W. David King dismissed the second complaint on the grounds that the defendants were not liable to the Meador children for the injuries they allegedly incurred because the alleged abuse was by a private party. The court first decided that *res judicata* and collateral estoppel were not applicable since the earlier case was decided by the Sixth Circuit solely on the grounds of lack of standing. As such, the earlier court's discussion of the failure to state a claim was dicta. The court then relied upon two cases in determining that the defendants were not liable: *Taylor by and through Walker v. Ledbetter*, 791 F.2d 881 (11th Cir.1986) and *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney*, the Supreme Court decided that in a section 1983 action, a state social service department's failure to protect a child against abuse by his father does not constitute a due process violation. In addition, Magistrate King decided that the statute of limitations barred the lawsuit. However, since the defendants did not raise the statute of limitations as an affirmative defense, the court ruled that the case was not subject to dismissal for that reason.

## II.

Whether the district court correctly dismissed the claims pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to *de novo* review. *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987). This court must construe the complaint in the light most favorable to Meador, accept all of Meador's factual allegations as true, and determine whether Meador undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Id.*

Meador argues that the Magistrate's reliance upon *DeShaney* was misplaced and the reliance upon *Taylor* was premature. In deciding that the state officials were not liable for its failure to remove an allegedly abused child from the custody of his fa-

ther, *DeShaney* explicitly reserved the question of whether a child abused in a foster home would have a section 1983 claim:

> Had the state by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Courts of Appeals have held ... that the State may be liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents.

109 S.Ct. at 1006 n. 9. Thus, *DeShaney* clearly does not apply to the instant case.

The original decision in *Taylor* was reversed in part by an en banc decision. 818 F.2d 791 (11th Cir.1987) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989). In the latter decision, the court held that a child allegedly abused in a foster home could raise a claim under section 1983. The complaint alleged that a foster mother's abuse of a child resulted in a coma. The court found that two claims were actionable: (1) that the deliberate indifference of the state officials in placing the child in a foster home resulted in a violation of a constitutionally protected liberty interest to be free from the infliction of unnecessary pain (a substantive due process claim); and (2) that the state statutes created a vested claim of entitlement pursuant to *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), such that deprivation of that benefit without due process of law violates the protection of liberty (a procedural due process claim). *See also Doe v. New York City Department of Social Services*, 649 F.2d 134 (2d Cir.1981), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (holding that deliberate indifference by state officials to child abuse within a foster home was actionable under section 1983 as a violation of the substantive due process right to be free from unnecessary harm).

■ Meador's complaint, though inartfully drafted, appears to allege a violation of both substantive and procedural due process. First, Meador claims that the Cabinet had a special relationship over the Meador children and therefore still had effective legal control. This contention is part of the substantive due process right to personal safety, as set forth in *Taylor* and *Doe*. We hold that due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes. On this basis, the complaint adequately alleges that the Cabinet and the state officials were "deliberately indifferent" to the reports of abuse in the Douglas Foster Home in violation of the Meador children's right to safety.

■ Second, Meador alleges that the deliberate indifference of the Kentucky officials and the Cabinet resulted in the deprivation of his children's entitlement to personal safety in the foster homes. The Georgia statues at issue in *Taylor* stated that " 'legal custody' [embodies] ... the right and duty to protect, train, and discipline [the child]" O.C.G.A. § 49–5–3(12); that "child-placing agencies, in placing children in foster family homes, shall safeguard the welfare of such children by thoroughly investigating each such home" O.C.G.A. § 49–5–12(1); and that "supervision of children in foster homes is to be maintained by the agency 'through visits made at regular intervals and as frequently as necessary for the best interest of the child;' " O.C.G.A. § 290–2–12–.08(16). The *Taylor* court concluded that the "Georgia scheme mandates that officials follow guidelines and take affirmative actions to ensure the well-being and promote the welfare of children in foster care. These children can state a claim based upon deprivation of a liberty interest in personal safety when the officials fail to follow this mandate." 818 F.2d at 799.

The Kentucky statutes at issue in the instant case create a similar framework of entitlements. Kentucky law provides that "[t]he cabinet shall arrange for a program of care, treatment and rehabilitation of the children committed to it," and that "the

cabinet shall be responsible for the operation, management and development of the existing state facilities for the custodial care and rehabilitation of children ..." Ky. Rev.Stat.Ann. § 605.100 (Baldwin 1987). We find that these statutes give the Meador children an entitlement to protective services of which they may not be deprived without due process of law. Thus, because both claims have a valid legal basis, we believe that the Magistrate erred in dismissing the complaint.

### III.

### A.

 The magistrate ruled that although he believed that the complaint was barred by the statute of limitations, he did not dismiss it on this basis "as this affirmative [defense] was not raised by the defendants." J.App. at 30. The alleged abuse occurred in late 1985 and early 1986; however, the instant complaint was not filed until November 1988. Kentucky law specifies that actions involving personal injury be filed within one year of the accrual of the cause of action. Because the complaint here was filed over two years later, the defendants could argue that the complaint is time-barred. We hold that the statute of limitations remains available as an affirmative defense upon remand because an answer had not yet been filed by the Cabinet; the case had only reached the dismissal stage.

### B.

In its appellate brief, the Cabinet raises the defenses of sovereign immunity and qualified immunity. With respect to the qualified immunity issue, it relies upon *Eugene D. by and through Olivia D. v. Karman*, 889 F.2d 701, 708–09 (6th Cir. 1989), in which this court held that the right to personal safety in a foster home was not a clearly established federal right in the time period from 1974 through 1982, thus giving the state officials qualified immunity from suit. "As a rule, this court declines to entertain arguments not presented in the first instance to the dis-

trict court." *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 397 (6th Cir.1989). A federal appellate court can resolve an issue not passed on below "where the proper resolution is beyond any doubt or where 'injustice ... might otherwise result.'" *Id.* (citations omitted). Because neither of the immunity arguments were raised below and because proper resolution of these issues is not beyond *any* doubt, we shall not consider them in this appeal.

### IV.

For the foregoing reasons, we REVERSE and REMAND the case for further proceedings consistent with this opinion.