**Deborah COKER, as Next Friend on Behalf of Craig COKER, Plaintiff,**

v.

**James HENRY, Cindy Doyle and Rick Zimmerman, jointly and severally, Defendants.**

**No. 4:91–CV–55.**

United States District Court,
W.D. Michigan.

Feb. 18, 1993.

Douglas A. Merrow, Kalamazoo, MI, for plaintiff.

Frank J. Monticello, Asst. Atty. Gen., Lansing, MI, for defendants.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This case presents in relevant part, a civil rights action under 42 U.S.C. § 1983. Plaintiff Deborah Coker alleges, as next friend of minor Craig Coker, that Craig's substantive and procedural due process rights were infringed as a result of his placement in a foster home where he was sexually assaulted by another foster child. Named as defendants are agents or employees of the Michigan Department of Social Services who participated in the placement of Craig Coker or the other youth, Cimmeron Frye, in the foster home. Defendants move the Court to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

I

It appears Craig Coker was placed in the foster care home of Johnnie and Mary Meadow in Three Rivers, Michigan, on or about April 12, 1989. He was 10 years old at the time. The placement was made by defendant protective services worker James Henry of the Michigan Department of Social Services in St. Joseph County, with supervision of defendant Cindy Doyle. One week earlier, defendant Michigan Department of Social Services caseworker

Rick Zimmerman had placed 16–year old Cimmeron Frye in the Meadows' foster home. The two youths were roommates in the Meadows' home. During the period April 12, 1989 to May 18, 1989, Craig Coker was "sodomized and/or sexually abused" by Cimmeron Frye.

The complaint alleges that Cimmeron Frye had a history of sexually deviant and assaultive behavior, of which defendants were or should have been aware. Notwithstanding this knowledge, the complaint further alleges, defendants placed Cimmeron Frye and Craig Coker in the Meadows' home without warning the Meadows of Cimmeron Frye's dangerous propensities.

The placement of Craig Coker in the home under these circumstances is alleged to constitute a denial of procedural due process in that defendants failed to properly provide Craig Coker with protective services to which he had a legitimate claim of entitlement under state law. Defendants are also alleged to have denied Craig Coker substantive due process in that they acted with deliberate indifference to the likelihood that he would be subjected to unnecessary harm in a state regulated foster home.

## II

■ Defendants' motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court must accept all well-pled factual allegations as true and construe the complaint in the light most favorable to plaintiff. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). A claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.*

## III

■ Defendants' motion levels a two-pronged attack. First, defendants contend that none of the state law duties relied on to support plaintiff's procedural due process claims is sufficiently specific and mandatory. Ordinarily, a § 1983 claim must be predicated on the deprivation of a federal constitutional right. However, state law in the form of statutes, rules, regulations or policy statements, may give rise to a protected liberty interest that cannot be infringed absent observance of procedural due process. *Washington v. Starke*, 855 F.2d 346, 348 (6th Cir.1988). In determining whether state law creates a protected liberty interest, the question is whether the state has imposed specific "substantive limitations" on the discretion of state officers, or, in other words, whether the state has used explicit "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed." *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Washington, supra*, 855 F.2d at 349; *Franklin v. Aycock*, 795 F.2d 1253, 1260 (6th Cir.1986). "The *mandatory* nature of the regulation is the key, as a plaintiff 'must have a legitimate claim of entitlement to the interest, not simply a unilateral expectation of it.'" *Washington*, 855 F.2d at 349, (emphasis in original), quoting *Bills v. Henderson*, 631 F.2d 1287, 1292 (6th Cir.1980).

### A

■ Plaintiff's procedural due process claims rest upon three state law sources. First, plaintiff alleges the Michigan Child Protection Law, M.C.L. § 722.621 *et seq.*, creates in Craig Coker a legitimate claim of entitlement to protective services. The Child Protection Law, in relevant part, defines and requires the reporting of child abuse and neglect. Defendants are alleged to be agents or employees of the Michigan Department of Social Services ("Department") charged with responsibility for investigating reports of suspected child abuse or neglect and for taking necessary action to prevent further abuses and to safeguard and enhance the welfare of the child. M.C.L. § 722.628(1), (2). The Department, having removed Craig Coker from his home because of child neglect,

was thus allegedly obliged to take necessary action to safeguard and enhance his welfare. This requirement is said to have given rise to a legitimate claim of entitlement in Craig Coker to appropriate action by defendants to protect him from unreasonable risk of harm. By placing Craig Coker in the Meadows' home with Cimmeron Frye without warning the Meadows of Frye's dangerous propensities, defendants allegedly deprived him of this entitlement without procedural due process.

The language in which plaintiff is forced to couch this claim belies its weakness. The statutory requirement that the Department take "necessary" action to safeguard and enhance children's welfare, loosely translated by plaintiff as "appropriate" action to prevent "unreasonable" risk of harm, hardly constitutes explicit language of an unmistakably mandatory character imposing specific substantive limitations on the discretion of state officers. Conversely, terms like "necessary," "appropriate" and "unreasonable" imply delegation of broad discretionary authority, rather than specific limitation thereof. Comparison of the Michigan Child Protection Law to the state statutes and regulations found in *Hewitt v. Helms, supra,* 459 U.S. at 471, 103 S.Ct. at 871, to be sufficiently explicit and mandatory to create a legitimate claim of entitlement reveals a clear qualitative difference.

Similarly, in an analogous factual context, the Sixth Circuit recently held sufficiently explicit and mandatory Kentucky's statutory framework, described as similar to Georgia's. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 476 (6th Cir.1990), *cert. denied* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). Referring to *Taylor, by and through Walker v. Ledbetter,* 818 F.2d 791, 798–99 (11th Cir. 1987) (en banc), *cert. denied* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989), the *Meador* court noted that the Georgia statutory scheme required state officials to protect children in their custody, thoroughly investigate foster homes, supervise children in foster homes through visits made at regular intervals, and follow established guidelines. Indeed, reference to the Geor-

gia statutory scheme, contained in the appendix to the *Taylor* decision, reveals its terms are substantially more explicit and mandatory than those of the Michigan Child Protection Law. The Michigan Child Protection Law does not prescribe and mandate compliance with specific procedures substantively limiting the discretion of state officers. It is not sufficiently explicit and mandatory and does not create a legitimate claim of entitlement of the nature here claimed.

### B

■ The second alleged source of plaintiff's protected property interest is Michigan's Child Care Organizations Law, M.C.L. § 722.111 *et seq.* Under this law, the Department is required to issue or renew a license for the operation of a foster home only where "the services and facilities are conducive to the welfare of the children." M.C.L. § 722.115(1). Based on this requirement, plaintiff contends Craig Coker had a legitimate claim of entitlement to placement in a home with foster care services conducive to his welfare.

Plaintiff reads the statute too broadly. It arguably creates a legitimate claim of entitlement to placement in a licensed foster home, whose licensure has been predicated upon satisfaction of the prescribed prerequisites. The statute explicitly requires the Department to (a) investigate the activities and proposed standards of care of a foster home license applicant; (b) make an on-site visit of the proposed home; and (c) determine the need for the home, its financial stability, the applicant's good moral character, and that the services and facilities are conducive to the welfare of children. However, plaintiff has not alleged that defendants failed to fulfill these requirements or that the Meadows' home was not or should not have been licensed. This is not a case like *Meador,* where a foster child allegedly suffered abuse at the hands of the foster father, abuse which arguably could have been prevented if state officers had followed state law procedural mandates. There simply is no nexus between the Department's performance of its licens-

ing duties under the Child Care Organizations Law and prevention or avoidance of the harm that befell Craig Coker. The statute prescribes mandatory licensing requirements, not placement criteria. It cannot reasonably be construed as creating a legitimate claim of entitlement to any assurances or safeguards beyond those attendant to licensure. Plaintiff has not alleged that Craig Coker was deprived of a protected liberty interest legitimately arising from the Child Care Organizations Law.

## C

■ Third, plaintiff alleges that a state administrative rule gives rise to a protected liberty interest. Plaintiff relies on Rule 230 of the State of Michigan Administrative Rules for Child Placing Agencies:

> Except for an emergency placement, a child shall be placed in foster care only after determination by the agency that the foster care program is an appropriate resource.

1980 A.A.C.S. R.400.6230.[1] Thus, plaintiff contends defendants were obliged to first determine that the Meadows' home was an appropriate resource before placing either Cimmeron Frye or Craig Coker there. Plaintiff alleges the Meadows' home was not an appropriate placement for Cimmeron Frye and was not an appropriate placement for Craig Coker after Cimmeron Frye was placed there. Plaintiff alleges defendants either did not make the Rule 230 appropriateness determinations or did so with gross negligence or deliberate indif-

ference, thereby denying Craig Coker procedural due process.[2]

Again, this theory suffers from the same defect as plaintiff's claims based on the Michigan Child Care Protection Law. Rule 230 does not impose explicit and substantive limitations on defendants' discretionary authority, but through use of a standard as amorphous as "appropriate," is designed to confer broad discretion. It does not create a legitimate claim of entitlement that can be denied only upon observance of procedural due process.[3]

The Court has thus duly considered all three of plaintiff's procedural due process theories of relief and finds, even upon viewing the complaint in the light most favorable to plaintiff, that she can prove no set of facts in support of the claims that would entitle her to relief. Accordingly, plaintiff's procedural due process claims against all three defendants must be dismissed because they fail to state claims upon which relief can be granted.

## IV

Plaintiff's substantive due process claims against defendants assert that Craig Coker's fundamental rights to reasonably safe living conditions and to freedom from infliction of unnecessary pain have been violated. Defendants contend they are entitled to qualified immunity and that the substantive due process claims should be dismissed.

■ Qualified immunity is a judicially created doctrine providing that government officials performing discretionary functions are shielded from civil damages liability as

---

1. The complaint erroneously refers to Rule 280, but the language relied on is contained in Rule 230.

2. This claim against each of the defendants, contained in Counts V, XI and XVII of the complaint purports to allege a substantive due process violation. Yet, because the asserted liberty interest arises from state law, not directly from federal law, it can only be properly construed as alleging a procedural due process violation. See *Franklin v. Aycock, supra*, 795 F.2d at 1262; *Taylor, supra*, 818 F.2d at 794.

3. The Court observes that Rule 279 could be deemed relevant to plaintiff's theory of relief. It requires, in relevant part, that a child placing

agency provide foster parents with "information about the child's known behavioral characteristics, needs, and plans to meet those needs" at the time of placement. 1980 A.A.C.S. R.400.-6279. Plaintiff's claims, however, are expressly premised on Rule 230, not Rule 279. Moreover, although it contains language explicit and mandatory, Rule 279 would appear to create a legitimate claim of entitlement, if at all, in the foster parents. The extent to which a foster child might be able to claim the protection of such an entitlement as a third party beneficiary, is a question left unaddressed.

long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The question of qualified immunity generally turns on the "objective legal reasonableness" of the official's action, assessed in light of the legal rules that were "clearly established" at the time it was taken. *Id.*, 483 U.S. at 639, 107 S.Ct. at 3039, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 819, 102 S.Ct. 2727, 2738, 2739, 73 L.Ed.2d 396 (1982). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton, supra*, 483 U.S. at 640, 107 S.Ct. at 3039. See also, *Harvey v. Metropolitan Sewer District*, 922 F.2d 332, 339 (6th Cir.1990).

Further, the Sixth Circuit Court of Appeals has provided the following guidance for determining whether a right is clearly established:

> In deciding whether the law was clearly established, we look to federal constitutional, statutory or case law existing at the time.... When the focus is on decisional law, we examine initially, and most importantly, the decisions of the Supreme Court and the courts of this circuit.... If case law from these sources is unavailable, we may also look for guidance to the cases from other circuits.... We recognize, however, that a single recent case from the court of appeals of another circuit is hardly sufficient to make the law "clearly established" in this circuit.

*Eugene D., by and through Olivia D. v. Karman*, 889 F.2d 701, 706 (6th Cir.1989), *cert. denied* 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990) (citations, footnote omitted).

In asserting qualified immunity, defendants contend the asserted due process right was not clearly established at the time Craig Coker was abused. The parties agree that the Supreme Court has not yet addressed the question whether the state's placement of a child in foster care gives rise under the Due Process Clause to an affirmative duty to protect the child. See *id.*, 889 F.2d at 707, citing *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201, n. 9, 109 S.Ct. 998, 1006, n. 9, 103 L.Ed.2d 249 (1989). The Sixth Circuit has specifically addressed the question in two recent decisions. In *Karman, supra*, the court expressly refrained from deciding whether such a right was clearly established as of November 1989, but ruled as a matter of law that the right was not clearly established in this circuit during the time period there at issue, May 1974 to December 1982. 889 F.2d at 708. In *Meador, supra*, the court recognized, as of the date of its opinion, May 8, 1990, "that due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes." 902 F.2d at 476. The court expressly declined to consider, however, whether the right was clearly established at the time of the claimed wrong, December 1985 to March 1986.

The *Karman* and *Meador* decisions thus establish the end poles of a continuum extending from December 1982, when the asserted right was definitely not recognized in the Sixth Circuit, to May 1990, when it definitely is. The status of the right during the time between the poles is unclear. The only other decision from this circuit addressing the specific question comes from the Western District of Michigan, *Lintz v. Skipski*, 807 F.Supp. 1299 (W.D.Mich.1992) (J. Quist). In *Lintz*, the court concluded the *Meador*-recognized right of foster children to freedom from the infliction of unnecessary harm was not clearly established between May 1987 and November 1990.

Similarly, this Court concludes the right was not clearly established in this circuit during the period here at issue, April and May 1989. In view of the gray area existing between the continuum poles established by *Karman* and *Meador*, the Court cannot hold the right was so clearly estab-

lished that a reasonable officer would have understood that placement of Craig Coker in the Meadows' home was a violation of his due process rights.

██ Plaintiff argues the ambiguity existing in the Sixth Circuit decisional law should be resolved by reference to the case law from other circuits upon which the *Meador* court relied in finally recognizing the right, *Taylor, by and through Walker v. Ledbetter*, 818 F.2d 791 (11th Cir.1987) (en banc), *cert. denied* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989); *Doe v. New York City Dep't of Social Services*, 649 F.2d 134 (2d Cir.1981), *cert. denied* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). This approach is not appropriate under the circumstances:

> [I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Ohio Civil Service Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir.1988). Only in the "extraordinary case" may the Court look to the decisional law of other circuits to discern "clearly established law." This is not such an extraordinary case. As the *Meador* court recognized, the *Taylor* and *Doe* rulings did not remove all doubt from proper resolution of the qualified immunity question. 902 F.2d at 477. They cannot, therefore, be deemed to have pointed so unmistakably—as to remove all doubt from the mind of a reasonable officer—to the conclusion that the conduct here complained of was unconstitutional.

Accordingly, based on reference to the decisional law of the Supreme Court, the

Sixth Circuit Court of Appeals and this court, the Court concludes that the asserted substantive due process rights to safe living conditions and freedom from infliction of unnecessary pain were not clearly established in April and May 1989. Reasonable state officers in the positions of defendants cannot be held to have understood that the complained of conduct was unconstitutional. Defendants are thus entitled to qualified immunity. Plaintiff's substantive due process claims against all three defendants must be dismissed.

V

In the wake of the above rulings, the only parts of the complaint remaining are pendent state law claims against each of the defendants. Upon dismissal of the § 1983 claims which form the basis for this Court's original subject matter jurisdiction, the Court declines to exercise pendent jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff may pursue her remedies in state court.

In so ruling, the Court does not mean to condone or excuse the alleged misfeasance of the defendants. The allegations of the complaint describe a tragedy that could have been avoided. As explained, however, the allegations do not present claims of a constitutional dimension remediable under 42 U.S.C. § 1983. Plaintiff's remedies lie elsewhere. Accordingly, the complaint will be dismissed in its entirety. An order consistent with this opinion shall issue forthwith.

## ORDER OF DISMISSAL

In accordance with the written Opinion of the Court of even date,

IT IS HEREBY ORDERED that defendants' motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that the complaint is DISMISSED in its entirety; the claims contained in Counts I, IV, V, VII, X, XI, XIII, XVI and XVII being dismissed for failure to state a claim upon which relief can be granted, Fed.R.Civ.P.

12(b)(6); the claims contained in Counts II, III, VIII, IX, XIV, and XV being dismissed because barred by qualified immunity, Fed. R.Civ.P. 12(b)(6); and the claims contained in Counts VI, XII, and XVIII being dismissed because the Court declines to exercise continuing supplemental jurisdiction over them, 28 U.S.C. § 1367(c)(3).