Sherry LINTZ; Keith Lintz, Sr.; Richele Nicole Jacobs; Brian Allen Jacobs; and Keith Lintz, Jr., by next friend Sherry Lintz, Plaintiffs–Appellants,

v.

Linda K. SKIPSKI, Defendant–Appellee.

No. 93–1430.

United States Court of Appeals, Sixth Circuit.

Argued March 3, 1994.

Decided May 25, 1994.*

* This decision was originally issued as an "unpublished decision" filed on May 25, 1994.

Robert A. Yingst (argued and briefed), and Holly F. Underwood (briefed), Boothby, Ziprick & Yingst, Berrien Springs, MI, for plaintiffs-appellants.

Charles C. Schettler, Jr. (argued and briefed), Office of the Atty. Gen., Tort Defense Div., Lansing, MI, for defendants-appellees.

James M. Straub (briefed) and John Michael Donahue, Straub; Seaman & Allen, St. Joseph, MI, for defendants.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

In this § 1983 action, the plaintiffs allege abuse of children in a state-licensed foster care home and appeal the district court's order granting summary judgment to the defendant based on qualified immunity, 807 F.Supp. 1299. The defendant, Linda Skipski, a social worker for the Cass County Department of Social Services, placed the plaintiffs, then ages 2, 4 and 5, in a foster home run by Kendall and Shirley Krause. The Krauses' adopted son, Dale, age 15, allegedly abused the children sexually between May 1987 and November 1990. Plaintiffs contend that defendant failed to conduct a proper investigation which would have uncovered the sexual abuse and that she did not adequately protect the children after the abuse came to light. The district court found defendant entitled to qualified immunity because the children's federal constitutional due process right to be free from unnecessary harm in foster homes was not clearly established until late in the period of harm alleged in the complaint and that thereafter none of defendant's acts violated plaintiffs' rights. The questions before us are: when did the substantive right found by the district court become clearly established; and, after that point, did defendant's conduct violate that right.

In the 1980's, other circuits ruled that foster children in state-licensed homes have a due process right to be protected by state officials. *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir.1987) (en banc), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989); *Doe v. New York City Department of Social Services*, 649 F.2d 134 (2d Cir.1981), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Nevertheless, in 1989 the Sixth Circuit held that social workers were entitled to qualified immunity in the foster care area because it was *not* clear in this circuit that children had a right to such protection. *Eugene D. v. Karman*, 889 F.2d 701 (6th Cir.1989) (Merritt, J., dissenting), *cert. denied*, 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). In fact, the Court's application of the qualified immunity doctrine in *Eugene D.* questioned whether foster children had any substantive due process rights and, consequently, whether a federal cause of action based on the Constitution existed.

In May 1990, our Court changed direction and held that "due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes," *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990), but left undefined the specific standard of conduct required. In addition to *Taylor* and *Doe*, other circuits are also now in accord. *Norfleet v. Arkansas Dept. of Human Services*, 989 F.2d 289 (8th Cir.1993); *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846 (7th Cir.1990). These cases analogize the state's role in placing children in foster homes to the mental institution and prison settings in which state liability has been clearly established for "deliberate indifference" to the plight of individuals in detention. *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

The district court held that the law became "clearly established" as of May 1990 with the decision in *Meador* but did not discuss the amount of time social workers had to adapt to the decision. We have previously stated that defendants are not usually lawyers and

that they do not have "familiarity with the contents of the Federal Reporter." *Davis v. Holly*, 835 F.2d 1175 (6th Cir.1987). State officials must have some time to adjust to and learn about judge-made law as it evolves, and this is particularly true in the foster care area because *Meador* changed the direction of the law in this circuit. This and other circuits have struggled to decide how long after a decision state officials have to become familiar with "the law," and no rule has emerged. In *Robinson v. Bibb*, 840 F.2d 349, 350 (6th Cir.1988), a panel of this Court noted the possibility that four days *might* not be enough time for an official to learn about a decision clearly establishing that certain conduct violates a right but under the facts of the case held that two years was more than enough time to satisfy the "clearly established" threshold. *Id.* at 350–51. *See also Arebaugh v. Dalton*, 730 F.2d 970, 973 (4th Cir.1984) (twelve days after Supreme Court decision may be enough time to have "read and digested the ... holding"); *Garcia v. Miera*, 817 F.2d 650, 657 n. 10 (10th Cir. 1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) (five months sufficient time to be aware of Tenth Circuit decision); *Schiff v. Williams*, 519 F.2d 257, 263 (5th Cir.1975) (Gee, J., specially concurring) (arguing that law was sufficiently established by Fifth Circuit opinion that had been decided two months prior to defendant's actions). *But see Affiliated Capital Corp. v. Houston*, 735 F.2d 1555, 1569–70 (5th Cir. 1984) (en banc), *cert. denied*, 474 U.S. 1053, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986) (granting qualified immunity notwithstanding Fifth Circuit case decided five months prior to defendant's unlawful action); *Schlothauer v. Robinson*, 757 F.2d 196, 197–98 (8th Cir. 1985) (qualified immunity granted despite on point decision decided eleven days prior to defendant's actions).

■ A court should apply a rule of reason in each case with respect to compliance with new decisions. As with other similar timing problems—for example in equitable tolling and laches cases—the question is one of fairness in light of all the facts. Here, four months seems sufficient for social workers to have learned of the decision and to have adjusted their conduct accordingly.

But we agree with the district court that the defendant's actions after May 1990 were not sufficiently unreasonable to constitute "deliberate indifference" to the children—the prevailing standard now being applied in such cases. *Norfleet*, 989 F.2d at 291; *Meador*, 902 F.2d at 476.

■ The district court's finding that qualified immunity bars liability for conduct prior to May 1990 does not mean defendant's knowledge of prior events is irrelevant on the question of deliberate indifference after the substantive right was established. What the defendant knew prior to the establishment of the right is part of the context in which a duty to act thereafter should be judged.

The Lintzes assert that signs of sexual abuse began to appear in the children before October 1990. From 1988 to 1990, Shirley Krause reported on several occasions that the children were "acting out" sexually by allegedly touching themselves and each other. The family was seeing a therapist whose notes say that in September 1988 the children told Mrs. Krause that Dale was hurting them, although nothing indicated that this included any sexual misconduct. In March 1990, one of the boys was disciplined at school for kissing and touching a girl, and a note from the teacher stated that he did not understand that his conduct was inappropriate. All of these incidents were discussed with the therapist who in turn reported them to Skipski. Plaintiffs argue that the defendant should have seen these as signs that the children were being sexually abused.

Plaintiffs also allege that defendant knew or should have known about previous sexual misconduct involving the Krauses' older son Robert, who pleaded guilty in 1984 to sexually assaulting a five year old girl. Robert did not live at the home while plaintiffs resided there and he is not involved in any of the allegations of abuse in this case. Nonetheless, because of this prior problem, plaintiffs allege that Skipski should have been on notice about possible abuse in the Krause home and thus that she failed to investigate properly the children's behavior.

On October 2, 1990, Mrs. Krause overheard two of the children in bed talking about pulling each other's pants down, which she reported. On October 8, 1990, the first

specific allegation of sexual abuse was made. One of the children told a therapist that he had oral sex with Dale Krause after Dale promised to give him two dollars and to let him play Nintendo. In response to this allegation, Skipski began an immediate investigation. She and the therapist met with the children and Mrs. Krause to discuss the incident. The discussion was renewed at home with Mr. Krause present. Skipski and the Krauses set up safeguards for the children's protection. They ensured that the children would be fully supervised so that no further abuse would occur while Skipski located another home which could accommodate all three siblings. As the district court noted, "Skipski searched for a place to send the children ... [she] discussed emergency placement with the attorney for Mrs. Lintz and the guardian-ad-litem for the children, both of whom apparently opposed moving the children immediately." *Lintz v. Skipski,* 815 F.Supp. 1066, 1069 (W.D.Mich.1993). There is no allegation of abuse during the month plaintiffs remained in the home before being relocated.

Plaintiffs maintain Skipski should have immediately removed the children from the home on October 8, 1990. Looking at all of the facts, we agree with the district court that defendant did not respond after May 1990 with deliberate indifference. As of October 8th, Skipski had only an accusation to rely on: Dale was not caught abusing the children. Indeed, when confronted, Dale denied the charges. Skipski investigated while she attempted to find a new home where all three children could stay together. Safeguards were instituted to insure the children's safety and within a month the children were removed from the Krause home. The whole affair might have been better handled from the beginning, but that is not the issue. There must be "deliberate indifference," and there was none after the substantive due process right became clearly established. This is the crucial point.

Accordingly the judgment of the district court is AFFIRMED.