Mary Ann BINKOWSKI, Plaintiff,

v.

FAMILY & CHILDREN'S SERVICES AGENCY, et al., Defendants.

No. 4:96–CV–22.

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 3, 1998.

Merritt W. Green, II, Robb, Messing, Palmer & Dignan, PC, Traverse City, MI, Paul T. Belazis, W. David Arnold, Nathan & Roberts, Toledo, OH, for Mary Ann Binkowski.

Merritt W. Green, II, Robb, Messing, Palmer & Dignan, PC, Traverse City, MI, for Rebecca Ann Binkowski.

Ronald W. Rice, Rice, Galin & Traurig, Southfield, MI, for Family and Children's Services, Inc., Donald Vanderkooy, Todd Lewicky, Susan Slis, Vonda Essenburg.

Richard H. Winslow, Cummings, McClorey, Davis & Acho, PC, Battle Creek, MI, for Kalamazoo Department of Human Services, Roger Vanderschie, Keith Walker, Jan Duplissie, Kalamazoo County, Kalamazoo County Community Mental Health Bd., John Wittekindt, M.D.

James D. Mequio, C. Giles Smith, Jr., Smith, Mequio & Koning, P.C., Portage, MI, for John Fries, M.D.

Debra M. Gagliardi, Jennifer M. Granholm, Attorney General, Mental Health Division, Lansing, MI, for James Coleman, Mukitarij Mehta, M.D.

Debra M. Gagliardi, Lansing, MI, for Chong Soo Kim, M.D., K.H. HSU, M.D., Robert Gibson, Gopal K. Bedi, Elaine Danaher.

Michael F. Condit, Condit, McGarry & Schloff, PC, Bloomfield Hills, MI, for Armando Desaloms, M.D.

E. Frederick Davison, Morrison, Mahoney & Miller, Grand Rapids, MI, for Winifred Frazee, Wayne Frazee, defendants.

David Stappenbeck, Ypsilanti, MI, pro se.

Richard P. Condit, Michael F. Condit, Condit, McGarry & Schloff, PC, Bloomfield Hills, MI, for Armando Desaloms, M.D.

## OPINION

QUIST, District Judge.

Plaintiff, the personal representative of the estate of Rebecca Ann Binkowski ("Binkowski"), has filed suit under 42 U.S.C. § 1983 for alleged violations of Binkowski's Fourteenth Amendment substantive due process rights. Plaintiff's complaint also includes pendent state law claims of negligence and failure to warn. There are 26 named Defendants in this case, who fall into four categories: the Kalamazoo Regional Psychiatric Hospital ("KRPH") defendants,[1] the Kalamazoo County Community Mental Health ("Kalamazoo County") defendants,[2] the Family and Children's Services Agency ("FCS") defendants,[3] and the individually represented Defendants, Dr. Armando Desaloms and Dr. John Fries.[4]

### Facts

Rebecca Ann Binkowski worked for FCS as a resident manager of Arlington Apartments, an apartment building leased by FCS for the purpose of providing residential placement to adults with mental illness. FCS, a private nonprofit agency, provided housing for mentally ill patients through a contract with the Kalamazoo County Community Mental Health Board ("CMH"). On February 3, 1993, Binkowski was murdered by one of the mentally ill patients at Arlington Apartments, David Stappenbeck.

Stappenbeck was a 24 year old client of CMH with a long history of mental illness. Stappenbeck had been diagnosed with paranoid schizophrenia, antisocial disorder, substance abuse disorder, and had suffered from command hallucinations in which he heard the voice of the devil. Stappenbeck also had a history of criminal acts, including setting his own house on fire at the age of 18 and a conviction in 1990 for breaking and entering.

Upon parole from his imprisonment for breaking and entering in September 1991, Stappenbeck was released to CMH, which placed Stappenbeck at the Fairweather Home, a semi-independent community setting in which several mentally ill adult men resided together in a home with some daytime supervision. Stappenbeck began to have problems at Fairweather, as he began to have paranoid delusions and to abuse illegal drugs. Stappenbeck was accused of instigating fights with other Fairweather residents, and in early July 1992, Stappenbeck voluntarily admitted himself to Borgess hospital, where he was assigned to a locked unit. Two weeks later, Stappenbeck left Borgess against medical advice and returned to Fairweather.

Several days after his return to Fairweather, Stappenbeck overdosed on medication in an attempt to commit suicide. Shortly thereafter, when Stappenbeck became physically aggressive with another Fairweather resident, Stappenbeck's CMH case manager, Keith Walker, petitioned for involuntary hospitalization of Stappenbeck at KRPH.

Stappenbeck remained at KRPH for sixty days and averted an involuntary hospi-

---

1. Plaintiff has not sued the hospital itself, but has sued several of its employees and officials, including Dr. Mukitarij Mehta, Dr. Gopal K. Bedi, Dr. Chong Soo Kim, Dr. James Coleman, Elaine Danaher, and Robert Gibson.

2. Binkowski has sued Kalamazoo County, the Kalamazoo County Department of Human Services, the Kalamazoo County Department of Human Services Board, the Kalamazoo County Community Mental Health Department, the Kalamazoo County Community Mental Health Board, and several employees and officers of the Kalamazoo County defendants, including Roger Vander Schie, Keith

Walker, Jan Duplissie, and Dr. John Wittekindt.

3. The Family and Children's Services Agency and several of its officers and employees, including Donald Vander Kooy, Todd Lewicky, Susan Slis, and Vonda Essenburg, have been dismissed from this case. Also dismissed from this case are Dr. K.H. Hsu, Wayne Frazee, and Winifred Frazee.

4. Dr. Desaloms was a doctor at KRPH at the time of the incident, and Dr. Fries was a psychiatrist employed by Kalamazoo County at the time of the incident.

talization proceeding by agreeing to accept the community treatment recommendations of CMH upon his release from the hospital. Upon his release from KRPH on September 15, 1992, Stappenbeck was placed by CMH, with the input of FCS, at Arlington Apartments, a semi-independent living environment. Shortly after Stappenbeck's placement at Arlington Apartments, Rebecca Ann Binkowski became employed as the resident manager at Arlington Apartments.

On January 6, 1993, after approximately four months at Arlington, Stappenbeck was found in his apartment with a kitchen knife, threatening suicide. He was returned immediately to KRPH. Stappenbeck was again found to be suffering from paranoid delusions. Stappenbeck stated he was hearing satanic voices which he said controlled him and told him what to do. KRPH staff noted Stappenbeck's poor impulse control, low stress tolerance, and predisposition to act without thinking of the consequences. However, Stappenbeck was released from KRPH after two weeks to return to Arlington Apartments, as doctors and psychiatrists at KRPH believed he had stabilized. On February 3, 1993, only two weeks after his release from KRPH, Stappenbeck stabbed and killed Binkowski.

### Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *See id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a

reasonable jury could return judgment for the non-moving party. *See id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *See id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). The summary judgment standard mirrors the standard for a directed verdict. *See id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *See id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *See id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; see also Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir. 1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Analysis

**A. The Court will defer on deciding the question of whether Plaintiff states a claim for a Fourteenth Amendment violation because the case can be decided on clearer non-constitutional grounds.**

Plaintiff claims that the Defendants acted with "deliberate indifference" to Binkowski's Fourteenth Amendment substantive due process rights in violation of 42

U.S.C. § 1983 by prematurely releasing Stappenbeck from KRPH and failing to take reasonable steps to ensure Binkowski's safety. Plaintiff's claim raises a difficult constitutional question of whether the Defendants' alleged conduct demonstrates "deliberate indifference" that is so "patently egregious" as to "shock the conscience," as is required to find liability for a Fourteenth Amendment substantive due process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716–21, 140 L.Ed.2d 1043 (1998).

This Court acknowledges that, as a general rule, it is best for courts to identify the "exact contours of the underlying right said to have been violated." *Id.* at 1714 n. 5. However, the reasons the Court cited in *Lewis* to support this proposition are more applicable to the Court of Appeals than to the District Court because, among other things, only the Court of Appeals establishes the "standards of official conduct" under § 1983. *See Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998) ("a district court within this circuit must 'find binding precedent by the Supreme Court, the Sixth Circuit, or ... itself' ") (quoting *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir.1992)). Furthermore, there is also a "policy of avoiding the unnecessary adjudication of constitutional questions," particularly those which are "both difficult and unresolved." *Lewis*, 118 S.Ct. at 1722–23 (Stevens, J., concurring) (agreeing with Justice Breyer's assertion that *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), "should not be read to deny lower courts the flexibility, in appropriate cases, to decide § 1983 claims on the basis of qualified immunity, and thereby avoid wrestling with constitutional issues that are either difficult or poorly presented"). Accordingly, the Court will resolve the § 1983 claim against Defendants under the doctrines of qualified immunity and Eleventh Amendment immunity, as well as on the particular facts under which certain defendants are being sued, thus avoiding the difficult and unresolved constitutional issue raised by Plaintiff's claim.

**B. All of the individual Defendants are entitled to summary judgment based on the doctrine of qualified immunity.**

Generally, government officials performing discretionary functions have qualified immunity from civil damages liability, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In other words, an official is liable only for violating rights which are "clearly established" at the time the right is violated. *Id.* at 639, 107 S.Ct. at 3038. It is not enough for a plaintiff to allege that the right to due process of law is "clearly established" under the Fourteenth Amendment. Instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized ... sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. Officials are immune unless "the law clearly proscribed the actions" they took. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "[T]o conclude that a constitutional right has been 'so "clearly established" that a "reasonable official would understand that what he is doing violates that right," ' a district court within this circuit must 'find binding precedent from the Supreme Court, the Sixth Circuit, or ... itself.' " *Summar*, 157 F.3d at 1058 (citation omitted) (quoting *Cagle*, 957 F.2d at 1348.) However, qualified immunity applies only to individuals, not government entities. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993).

 It was not clearly established at the time of the actions of the Defendants that a mental health practitioner could be held liable under § 1983 for violating the due process rights of a third party injured by a discharged patient. The law did not clearly say that the Defendants' actions would subject them to § 1983 liability for due process violations to a party injured by the discharged patient. Even the "state-created-danger" theory of liability relied upon by Plaintiff was not adopted by the Sixth Circuit until 1998, five years after the tragic events in this case were concluded. *See Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998) ("[a]lthough our circuit has never held the state or a state actor liable under the Fourteenth Amendment for private acts of violence, we nevertheless have recognized the possibility of doing so under the state-created-danger theory"). Additionally, Plaintiff has been unable to cite *any* case holding a mental health practitioner liable for violating the due process rights of the victim in such a situation, despite several reported cases in the Sixth Circuit and in Michigan state courts which have considered state law tort liability in such a situation. *See, e.g., Sellers v. United States,* 870 F.2d 1098, 1099–1101 (6th Cir.1989) (per curiam); *Soutear v. United States,* 646 F.Supp. 524, 532–38 (E.D.Mich.1986) (mem.op.); *Canon v. Thumudo,* 430 Mich. 326, 332–41, 422 N.W.2d 688, 690–94 (1988). As a result, the claims against all Defendants except the Kalamazoo County entities[5] must be dismissed under the doctrine of qualified immunity.

**C. The Kalamazoo County Mental Health entities are entitled to Eleventh Amendment immunity.**

 The State of Michigan and its agencies are immune from liability for damages or injunctive relief in federal court pursuant to the Eleventh Amendment. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) ("a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Although Eleventh Amendment immunity can be waived, the Supreme Court has held that § 1983 does not abolish a state's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2310, 105 L.Ed.2d 45 (1989). Therefore, the Court must consider whether the Kalamazoo County Mental Health entities are considered agencies of the State of Michigan and therefore immune from liability under the Eleventh Amendment.

 It is well established that County Departments of Social Services in Michigan are treated as state agencies immune from liability under the Eleventh Amendment. *See Lintz v. Skipski,* 807 F.Supp. 1299, 1303 (W.D.Mich.1992) (noting that "County DSS offices have repeatedly been found to be instrumentalities of the state"), *aff'd,* 25 F.3d 304 (6th Cir.1994). However, the County itself is not entitled to Eleventh Amendment immunity. *See Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 47, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994) (observing that "cities and counties do not enjoy Eleventh Amendment immunity").

**D. Plaintiff has failed to state a claim under § 1983 against Kalamazoo County.**

 In order to state a claim for a substantive due process violation of § 1983

5. The Kalamazoo County entities remaining in this litigation are Kalamazoo County, Kalamazoo County Community Mental Health, and the Kalamazoo County Community Mental Health Board. Kalamazoo County Department of Human Services has been suc-ceeded by Kalamazoo County Community Mental Health, and Kalamazoo County Department of Human Services Board has been succeeded by the Kalamazoo County Community Mental Health Board.

against a county, the plaintiff must prove that the county established a policy or custom that was deliberately indifferent to a third party's constitutional rights. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). A county cannot be held liable under § 1983 on a theory of respondeat superior or vicarious liability. *See id.*

■ Plaintiff has failed to allege, either in her Third Amended Complaint or in her Memorandum in Opposition to Summary Judgment, any policy or custom involving Kalamazoo County whatsoever. Plaintiff's theory of liability for Kalamazoo County is predicated upon the acts and omissions of Kalamazoo County Community Mental Health and the Kalamazoo County Community Mental Health Board. (*See* Pl.'s Br. Opp'n at 14–16.) However, as indicated in section C, *supra,* these Community Mental Health entities are *state* agencies, not county agencies, and therefore Kalamazoo County cannot be held liable under a theory based on the actions and omissions of Kalamazoo County Community Mental Health or the Kalamazoo County Community Mental Health Board. Accordingly, summary judgment must be entered in favor of Kalamazoo County on Plaintiff's § 1983 claim.

## E. Defendants Desaloms and Fries are also entitled to summary judgment on the merits of the § 1983 claims.

The roles of Dr. Desaloms and Dr. Fries in treating Stappenbeck were extremely limited. Both of these doctors' roles were limited to review of the medication level of Stappenbeck. Neither played any role in the hospitalization of Stappenbeck, the decision to release him to KRPH, or the decision to place Stappenbeck at Arlington Apartments. (*See* Desaloms Aff., Desaloms' Reply Br. Ex. E., ¶¶ 7–9; Fries Dep., Pl.'s Br. Opp'n Ex. P at 16–17, 39.) At oral argument, Plaintiff's counsel admitted that the § 1983 claims against Dr. Desaloms and Dr. Fries were "tenuous" at best and that Plaintiff's claims against these individuals were almost entirely based on Plaintiff's state law claims.

■ Because Dr. Desaloms and Dr. Fries played absolutely no role in the hospitalization of Stappenbeck, the decision to release him to KRPH, or the decision to place Stappenbeck at Arlington Apartments, Dr. Desaloms and Dr. Fries cannot be held liable under the "state-created danger" theory of liability being offered by Plaintiff as her theory of liability under § 1983. *See* Pl.'s Br. Opp'n at 16–17 (citing *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998)). Therefore, Dr. Desaloms and Dr. Fries are not only entitled to qualified immunity, but are entitled to summary judgment in their favor on Plaintiff's § 1983 claim because of the absence of any genuine issue of material fact concerning their extremely limited role in this case.

## F. Binkowski's pendent state law claims will be dismissed.

■ Because summary judgment has been entered on all of the federal claims against Defendants, Plaintiff's state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3). "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996) (citing *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank,* 738 F.2d 163, 166 (6th Cir.1984)). Further, the Sixth Circuit has said that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson,* 89 F.3d at 1254–55; *see also Eubanks v. Gerwen,* 40 F.3d 1157, 1161–62 (11th Cir.1994) (stating that when only state law claims remain, a federal court should decline jurisdiction by dismissing the case without prejudice) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988)). The Court finds no compelling reason to deviate from the general

rule by retaining jurisdiction over Plaintiff's state law claims.

### Conclusion

For the foregoing reasons, summary judgment will be entered on Plaintiff's § 1983 claims in favor of the Defendants, and Plaintiff's pendent state law claims will be dismissed without prejudice.