71 F.3d 1182
 ''TONY'' L. and ''Joey" LL., (Minor children By and Through
their next friend, Bruce SIMPSON),
Plaintiffs-Appellants,
v.
Masten CHILDERS, II, in his official capacity as Secretary
of the Cabinet for Human Resources; Cabinet For Human
Resources, Department for Social Services, Commonwealth of
Kentucky; Sally Bowzer, in her individual capacity;
Unknown State Official I, in his or her individual capacity;
Unknown State Official II, in his or her individual
capacity, Defendants-Appellees.
 No. 94-5333.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 14, 1995.
Decided Dec. 20, 1995.
 
 T. Bruce Simpson (argued and briefed), Anggelis, Gordon & Simpson, Lexington, KY, Joe F. Childers, Lexington, KY, for Tony L. and Joey L.
 E. D. Klatte, Staff Atty. (argued and briefed), Office of the Counsel, Frankfort, KY, for Cabinet for Human Resources, Sally Bowzer, Unknown State Official I, Unknown State Official II and Masten Childers, II.
 Before: NELSON, RYAN, and McKAY,* Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 The Plaintiffs appeal the dismissal of their 42 U.S.C. Sec. 1983 action on qualified immunity grounds. The facts as alleged by Plaintiffs are as follows. Tony and Joey L., brothers and plaintiffs in this action, experienced from an early age onward some of the most despicable acts of sexual and physical abuse imaginable. The mother and her various boyfriends were the main perpetrators of these acts.
 
 
 2
 The rank abuse and neglect of these children did not go unnoticed. From 1985 to 1991, the Franklin County, Kentucky office of the Cabinet for Human Resources received at least forty-three reports indicating that Tony and Joey were being abused or neglected. These reports came from school teachers, day care center workers, neighbors, and police. Virtually all who came into contact with Tony and Joey recognized that the aberrant behavior of the boys was probably the result of abuse or neglect.
 
 
 3
 Cabinet social workers investigated many, if not most, of these reports over this six-year period. Despite the growing evidence of abuse and neglect, the Cabinet did not separate the boys from their mother until 1991. By then, the emotional damage Tony and Joey incurred was tremendous and probably irreparable.
 
 
 4
 Plaintiffs brought this Sec. 1983 action asserting that Defendants violated their federal due process rights by not enforcing various Kentucky child protection statutes. Plaintiffs also asserted that the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. Sec. 5101 et seq., creates rights which plaintiffs can enforce in a Sec. 1983 action.
 
 
 5
 The district court dismissed both claims of the complaint because of qualified immunity. It held that no legal authority "clearly established in the plaintiffs a fundamental right and entitlement to the enforcement of Kentucky's child protective statutes during the period from 1985 to 1991." Dist. Ct. Op. (Aug. 9, 1993), J.A. at 226. Similarly, the court held that no legal authority clearly established that CAPTA creates enforceable rights. Id. at 227. Plaintiffs appeal the district court's grant of qualified immunity on both claims. We affirm the district court, but for different reasons.
 
 
 6
 When considering the question of qualified immunity, the court should first ask "whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Only after the court makes this determination, does it consider whether this right was clearly established. See id.; Christophel v. Kukulinsky, 61 F.3d 479, 484-85 (6th Cir.1995). Thus, we must first ask whether the facts as alleged by plaintiffs state a claim under Sec. 1983. See, e.g., Siegert, 500 U.S. at 233-34, 111 S.Ct. at 1793-94 (examining whether facts as alleged by plaintiff stated a claim for violation of a constitutional right).
 
 I. Procedural Due Process
 
 7
 Plaintiffs first allege that their Fourteenth Amendment due process rights were violated when Defendants failed to enforce various Kentucky statutes providing for the welfare of minors. On appeal, Plaintiffs only argue that their procedural due process rights were violated.[1] Appellant Br. at 12, 14.
 
 
 8
 We begin our analysis by examining whether plaintiffs have any protected interests at all. Only if we find a protected interest do we ask whether the deprivation of that interest was in accordance with due process. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). Of the life, liberty, and property interests protected by the Due Process Clause, only liberty is implicated in this case. Liberty interests " 'may arise from two sources--the Due Process Clause itself and the laws of the States.' " Id. (citation omitted). Under DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195, 109 S.Ct. 998, 1002-03, 103 L.Ed.2d 249 (1989), plaintiffs cannot successfully argue and have not argued that they have a protected liberty interest arising from the Due Process Clause itself. Thus, if plaintiffs have a protected liberty interest, it must be a liberty interest created by state law.
 
 
 9
 State-created liberty interests arise when a state places "substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); Kentucky Dep't of Corrections, 490 U.S. at 462, 109 S.Ct. at 1909-10. A state substantively limits official discretion "by establishing 'substantive predicates' to govern official decisionmaking ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Id. (citation omitted). The state statutes or regulations in question also must use "explicitly mandatory language" requiring a particular outcome if the articulated substantive predicates are present. Id. at 463, 109 S.Ct. at 1910. But see Sandin v. Conner, --- U.S. ----, ----, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418 (1995) (reasoning that, in the prison context, the analysis should focus on the nature of the deprivation rather than the language of the regulation involved). Finally, the statute or regulation must require a particular substantive outcome. State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory. Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir.1993) (holding that victim impact law, requiring prosecutor to give notice of trial or guilty plea entry to victim, does not create an interest protected by the Due Process Clause because it only creates expectation of process and not expectation of a particular substantive result), cert. denied, --- U.S. ----, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994).
 
 
 10
 Here, Plaintiffs have referred the court to Kentucky's Unified Juvenile Code, comprising forty-five chapters of the Kentucky Revised Statutes.[2] In reviewing these code sections, only two provisions potentially embody state-created liberty interests which would benefit Plaintiffs in this case.[3] First, K.R.S. Sec. 620.050(3) provides:
 
 
 11
 Upon receipt of a report of an abused, neglected or dependent child pursuant to this chapter, the cabinet as the designated agency or its delegated representative shall initiate a prompt investigation, take necessary action and shall offer protective services toward safeguarding the welfare of the child.
 
 
 12
 The language of this statute is undoubtedly mandatory. Furthermore, the statute mandates action based upon substantive predicates.[4]
 
 
 13
 The claim of a state-created liberty interest fails, however, because no particular substantive outcome is mandated. The requirement that an investigation be initiated only gives plaintiffs an expectation of receiving a certain process. See Pusey, 11 F.3d at 656.[5] The statute also requires the Cabinet to take "necessary action" and to offer "protective services." Nowhere does the Unified Juvenile Code define these terms. Nor does the Code set forth the options available to the Cabinet. It does not explain, for example, whether the Cabinet should take the child from the home, provide the parent with counseling, or simply monitor the family situation on a regular basis. Each of these actions, and a myriad other possibilities, appears to be a reasonable response to a report of child abuse. Yet, the Unified Juvenile Code does not specifically require the Cabinet to take any one of them. An expectation that some sort of action will be taken is not enough. Rather, a plaintiff must have an expectation that a particular result will follow from a particular, required action. This statute simply does not provide Plaintiffs with such an expectation.
 
 
 14
 Second, K.R.S. Sec. 620.040 requires the Cabinet to take certain actions upon receiving a report of child abuse. For example, K.R.S. Sec. 620.040(1) requires the Cabinet, upon receiving a report of abuse or neglect, to investigate the matter and to report the matter to the state or county attorney, as well as to the local enforcement agency or the state police. K.R.S. Sec. 620.040(2) requires similar action for reports of dependency.[6] Again, these requirements do not mandate any particular substantive result. Rather, they only give Plaintiffs an expectation that a certain procedure will be followed. This is not sufficient to give rise to a state-created liberty interest.
 
 
 15
 Finally, Plaintiffs refer us to K.R.S. Sec. 200.100(2). This statute requires the Cabinet to "discover dependent, neglected, delinquent and defective children, and shall secure for them the benefits of law...." This statute fails to create a liberty interest for the same reasons as the others. It requires no particular substantive outcome and leaves the Cabinet with a broad amount of discretion.
 
 
 16
 To some, the conclusion that Plaintiffs have no state-created liberty interest may seem to thwart the very purpose for which the State of Kentucky passed its Unified Juvenile Code. This Code, however, recognizes several, sometimes competing, interests. For example, the legislature has declared that children have a fundamental right to be free from sexual, physical, and emotional abuse. It recognizes that children may need to be taken from their homes in order to vindicate these rights. See K.R.S. Sec. 620.010. Yet the Legislature has also declared that the Unified Juvenile Code should be construed to "strengthen and maintain the biological family unit" and further directs courts not to remove children from their homes unless "absolutely necessary." See K.R.S. Sec. 600.010(2)(a) & (c). State agencies and social workers need discretion as to what actions to take if they are to balance successfully these competing interests. Not surprisingly, the Legislature did not take this discretion away from those charged with enforcing the Unified Juvenile Code. If we were to fashion a rule requiring Defendants to take certain actions, we would be limiting the discretion which is necessary to effectuate the Kentucky Legislature's expressly declared policies.[7]
 
 
 17
 This reasoning explains why Meador v. Cabinet for Human Resources, 902 F.2d 474 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990), is inapposite. In Meador, plaintiffs were children in the custody of the Kentucky Cabinet of Human Resources.[8] The Cabinet placed the children in a foster home in which they were later sexually abused. The Kentucky law at issue provided that
 
 
 18
 "[t]he cabinet shall arrange for a program of care, treatment and rehabilitation of the children committed to it," and that "the cabinet shall be responsible for the operation, management and development of the existing state facilities for the custodial care and rehabilitation of children...."
 
 
 19
 Id. at 476-77 (citing K.R.S. Sec. 605.100). The court held that this statute embodied a state-created liberty interest, entitling the children to "protective services of which they may not be deprived without due process of law." Id. at 477.
 
 
 20
 At first glance, the statute in Meador and the statutes in this case appear to be similar. Both require state officials to provide for the safety of children, yet neither mandates how the officials are to accomplish this requirement. Nevertheless, a difference exists. No matter what action an official takes to further the safety of children in foster homes, only one relevant policy goal will be furthered: the policy of making foster homes safe. The exercise of official discretion will not affect the substantive outcome. Thus, the existence of discretion in Meador did not defeat the plaintiffs' liberty interest.
 
 
 21
 In the present case, however, competing policy goals exist. When the Cabinet receives a report of child abuse, it must balance the need to protect the child with the need to protect the integrity of the biological family. The exercise of discretion may affect the substantive outcome. Thus, discretion is inherently necessary to effectuate the policy goals of the statutes in this case. This was not true in Meador.
 
 
 22
 Thus, neither the words of the relevant statutes nor the policy goals expressed therein limit the discretion of Defendants enough to create a liberty interest protected by the Due Process Clause of the United States Constitution. Having held that Plaintiffs have failed to assert a claim for violation of their procedural due process rights, we need not consider whether such rights were clearly established for purposes of qualified immunity.
 
 II. Child Abuse Prevention and Treatment Act
 
 23
 Plaintiffs have also asserted that the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. Sec. 5101 et seq., creates rights they can enforce in a Sec. 1983 action. The district court dismissed this claim because of qualified immunity. As stated above, when considering a claim of qualified immunity, we must first determine whether plaintiff has stated a claim at all before we reach the issue whether the right asserted was clearly established.
 
 
 24
 A plaintiff may sue under Sec. 1983 for violation of a federal statute unless:
 
 
 25
 (1) "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of Sec. 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself."
 
 
 26
 Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (brackets in original) (citation omitted). Defendants do not argue that Congress has foreclosed enforcement of the statute in the enactment itself. Thus, we will only consider whether the statute creates enforceable rights, privileges, or immunities.
 
 
 27
 We must apply a three-part test to determine whether CAPTA creates enforceable rights, privileges, or immunities within the meaning of Sec. 1983:
 
 
 28
 (1) Was the provision in question intended to benefit the plaintiff?
 
 
 29
 (2) Does the statutory provision in question create binding obligations on the defendant governmental unit, rather than merely expressing a congressional preference? and
 
 
 30
 (3) Is the interest the plaintiff asserts specific enough to be enforced judicially, rather than being "vague and amorphous"?
 
 
 31
 Wood v. Tompkins, 33 F.3d 600, 604-05 (6th Cir.1994) (citing Wilder, 496 U.S. at 509, 110 S.Ct. at 2517).[9]
 
 
 32
 In relevant part, CAPTA allows grants of federal money "for purposes of assisting the States in developing, strengthening, and carrying out child abuse and neglect prevention and treatment programs." 42 U.S.C. Sec. 5106a(a) (1988), amended by 42 U.S.C. Sec. 5106a(a) (Supp. V 1993).[10] The eligibility requirements and their implementing regulations for these grants are the only CAPTA provisions that potentially create rights enforceable by plaintiffs in this action.[11] Of these requirements, 42 U.S.C. Sec. 5106a(b)(2) (1988) provides the most likely source of rights:[12]
 
 
 33
 In order for a State to qualify for a grant under subsection (a) of this section, such State shall--
 
 
 34
 ....
 
 
 35
 (2) provide that upon receipt of a report of known or suspected instances of child abuse or neglect an investigation shall be initiated promptly to substantiate the accuracy of the report, and, upon a finding of abuse or neglect, immediate steps shall be taken to protect the health and welfare of the abused or neglected child and of any other child under the same care who may be in danger of abuse or neglect[.]
 
 
 36
 This eligibility requirement is clearly intended to benefit children such as Tony and Joey. Its mandatory language, as well as its inclusion as a requirement for eligibility, indicates that the requirement is a binding obligation rather than a congressional preference. The only issue raised is whether this requirement is sufficiently specific to be judicially enforceable or whether it is too "vague and amorphous."
 
 
 37
 Recently, in Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court considered whether a provision of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. Sec. 620 et seq., was too vague to create a Sec. 1983 enforceable right. The provision in question required the defendant State to use "reasonable efforts" to maintain a child in his home, before placing him in a foster home. Id. at 357, 112 S.Ct. at 1366-67. No statute or regulation, however, defined the phrase "reasonable efforts." The Court held that this lack of definition made the statute too vague to create a right enforceable under Sec. 1983. Id. at 360, 112 S.Ct. at 1368-69.
 
 
 38
 By way of contrast, in Wilder v. Virginia Hospital Association, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Supreme Court considered a Medicaid provision which required participating states to reimburse health care providers at "reasonable and adequate" rates. Id. at 502-03, 110 S.Ct. at 2513-14. The Court held that this phrase was sufficiently specific to create an enforceable right because "the statute and regulation set out factors which a State must consider in adopting its rates." Id. at 519, 110 S.Ct. at 2522.
 
 
 39
 Thus, the issue becomes whether CAPTA creates a particularized duty on the state, as in Wilder, or whether it merely creates a generalized duty on the state, as in Suter. See, e.g., Wood v. Tompkins, 33 F.3d 600, 605 (6th Cir.1994) (construing Wilder and Suter ). Section 5106a(b)(2) of CAPTA requires an "investigation" upon receipt of a child abuse report and requires that "immediate steps" be taken to protect such children. The implementing regulations flesh out these requirements somewhat. Title 45 C.F.R. Sec. 1340.14 provides:
 
 
 40
 (d) Investigations. ... This investigation may include the use of reporting hotlines, contact with central registers, field investigations and interviews, home visits, consultation with other agencies, medical examinations, psychological and social evaluations, and reviews by multidisciplinary teams.
 
 
 41
 ....
 
 
 42
 (f) Emergency services. If an investigation of a report reveals that the reported child or any other child under the same care is in need of immediate protection, the State must provide emergency services to protect the child's health and welfare. These services may include emergency caretaker or homemaker services; emergency shelter care or medical services; review by a multidisciplinary team; and, if appropriate, criminal or civil court action to protect the child, to help the parents or guardians in their responsibilities and, if necessary, to remove the child from a dangerous situation.
 
 
 43
 These regulations appear to place this case in between the Supreme Court's teachings in Wilder and Suter. Because the regulations use the word "may," the State need not rely on the examples of "investigation" and "emergency services" provided. Thus, this case is not like Wilder, in which the state was required to consider certain factors. On the other hand, these regulations are clearly intended to provide some guidance to states when initiating emergency services or an investigation. Thus, this case is not like Suter, in which no guidance whatsoever was provided.
 
 
 44
 Despite this quandary, we hold that Plaintiffs have no enforceable rights under this provision of CAPTA. The statute and regulations at issue are more like those in Suter (no guidelines) than those in Wilder (mandatory guidelines). Ultimately, neither CAPTA nor the relevant regulations mandate a particular means of investigation or state what type of actions must be taken to protect abused or neglected children. Defendants retain discretion under CAPTA to disregard the examples provided.
 
 
 45
 It is apparent, and reasonable, that Congress wanted to leave states a certain amount of discretion in this area. If we were to hold that Defendants should have taken some action, we would run the risk of limiting the discretion inherent in Defendants' duties under CAPTA. Thus, this case is more analogous to Suter where the defendant State had unfettered discretion when deciding what constituted "reasonable efforts." In Wilder, on the other hand, defendant did not have discretion to disregard certain enumerated factors.
 
 
 46
 Plaintiffs also argue that, regardless of their Sec. 1983 rights, they have a private right of action under CAPTA pursuant to Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The district court, however, construed Plaintiffs' complaint as alleging a Sec. 1983 violation, but not alleging a private cause of action. Dist. Ct. Op. (Aug. 9, 1993), J.A. at 227 n. 6; Dist. Ct. Op. (Feb. 14, 1994), J.A. at 231-32. The district court also refused to allow Plaintiffs to amend their complaint, reasoning that to do so would be futile. Dist. Ct. Op. (Feb. 14, 1994), J.A. at 232-34. We agree with the district court. Under Cort, the "most important inquiry ... is whether Congress intended to create the private remedy sought by the plaintiffs." Suter, 503 U.S. at 364, 112 S.Ct. at 1370. Our above analysis indicates we do not think that Congress intended to create a private right of action under the CAPTA provisions we have discussed. See id.
 
 
 47
 Plaintiffs have no claim for a violation of any rights under CAPTA. Thus, we need not reach the question of whether such rights were clearly established for purposes of qualified immunity. We AFFIRM.
 
 
 
 *
 The Honorable Monroe G. McKay, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation
 
 
 [1]
 Even if we were to construe Plaintiffs' brief as arguing substantive due process rights, such a claim would be foreclosed by DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)
 
 
 [2]
 The Kentucky Unified Juvenile Code went into effect on July 1, 1987 and does not cover any incidents which occurred before then. Consequently, Plaintiffs also refer us to two statutes in effect from 1985 to 1987, K.R.S. Secs. 199.335 and 199.460. Section 199.335, in relevant part, was recodified at the current Sec. 620.050(3). Likewise, Sec. 199.460 was recodified, in relevant part, at the current Sec. 605.130(1). Because these statutes exist in the current Unified Juvenile Code, we need not consider them separately
 
 
 [3]
 We make no decision as to other provisions not implicated in this case. For example, we have not considered any of the provisions dealing with children in state custody
 
 
 [4]
 For example, action is required if a report is received. Furthermore, that report must relate to an abused, neglected or dependent child. The Unified Juvenile Code, in turn, provides several substantive criteria for determining whether a child is abused, neglected or dependent. K.R.S. Sec. 600.020(1) (defining "Abused or neglected child"); K.R.S. Sec. 600.020(15) (defining "Dependent child")
 
 
 [5]
 An examination of Plaintiffs' Complaint and Amended Complaint reveals that the Cabinet actually investigated most of the reports it received about Plaintiffs
 
 
 [6]
 Kentucky Revised Statutes Sec. 620.040 provides:
 (1) Upon receipt of a report alleging abuse or neglect by a parent, guardian, or person exercising custodial control or supervision, pursuant to KRS 620.030(1) or (2), the recipient of the report shall forthwith notify the cabinet or its designated representative, the local law enforcement agency or Kentucky State Police, and the Commonwealth's or county attorney of the receipt of the report unless they are the reporting source.
 The cabinet shall investigate the matter immediately and within seventy-two (72) hours, exclusive of weekends and holidays, make a written report to the Commonwealth's or county attorney and the local enforcement agency or Kentucky State Police concerning the action which has been taken on the matter. If the report alleges abuse or neglect by someone other than a parent, guardian, or person exercising custodial control or supervision, the cabinet shall forthwith notify the Commonwealth's or county attorney and the local law enforcement agency or Kentucky State Police.
 (2) Upon receipt of a report alleging dependency pursuant to KRS 620.030(1) and (2), the recipient shall forthwith notify the cabinet or its designated representative. The cabinet shall investigate reports of alleged dependency not later than forty-eight (48) hours after receipt of the report but need not notify the local law enforcement agency or Kentucky State Police or county attorney or Commonwealth's attorney of such reports. If the cabinet or its designated representative receives a report of abuse by other than a parent, guardian, or other person exercising custodial control or supervision of a child, it shall forthwith notify the local law enforcement agency or Kentucky State Police and the Commonwealth's or county attorney of the receipt of the report and its contents and they shall investigate the matter. The cabinet or its designated representative may participate in an investigation of noncustodial abuse at the request of the local law enforcement agency or the Kentucky State Police.
 
 
 [7]
 Plaintiffs, for example, assert that the statutes in question required Defendants to remove Plaintiffs from the custody of their mother. If we were to agree with Plaintiffs, we would, in effect, be limiting the discretion of Defendants to effectuate the policy goals of the state legislature
 
 
 [8]
 In substantive due process analysis, state custody of the plaintiff is often necessary before the defendant State will have any duty towards plaintiff. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 198-201, 109 S.Ct. 998, 1004-06, 103 L.Ed.2d 249 (1989). In the procedural due process/state-created liberty interest context, however, custody is not required in order for due process rights to exist. A state may create a liberty interest accorded procedural due process protection regardless of whether the plaintiff is or was in state custody
 
 
 [9]
 Contrary to Defendants' assertion, this analytical framework was not altered by the Supreme Court's recent decision in Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). See, e.g., Wood v. Tompkins, 33 F.3d 600, 605-06 (6th Cir.1994) (explaining how Wilder and Suter are consistent)
 
 
 [10]
 The original version of this provision and other CAPTA provisions discussed in this opinion are located at Act of Jan. 31, 1974, Pub.L. No. 93-247, Sec. 4(b)(1) and (2), 1974 U.S.C.A.A.N. (88 Stat.) 4, 6
 
 
 [11]
 We make no decision as to other CAPTA provisions not implicated in this case. For example, CAPTA also contains provisions relating to adoption, which is not at issue here. 42 U.S.C. Sec. 5111 et seq
 
 
 [12]
 The other eligibility requirements contained in Sec. 5106a(b) are either irrelevant to this case, e.g., relate to confidentiality of reports, or clearly do not create enforceable rights. Subsections 5106a(b)(1) and (3), for example, are very similar to a provision the Supreme Court rejected in Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). They require participating states to have "in effect" certain laws and procedures regarding child abuse and neglect. Under Suter, the participating state has satisfied its duty so long as it has actually enacted the necessary law or created the necessary procedure. Id. at 358-59, 112 S.Ct. at 1367-68. Here, Plaintiffs have not alleged that the necessary laws and procedures were not enacted. Rather, they argue that the laws and procedures were not enforced