22 F.Supp.2d 1217 (1998)
A.S., By and Through her guardians and next friends, Franklin Brent BLALOCK and Carrol Blalock, Plaintiff,
v.
Kathleen TELLUS, Barbara Clark, Gloria Markuly, Elaine Good, and Carmita Grayson, a/k/a/ Carmette Grayson, Defendants.
No. CIV.A. 96-1211-JTM.
United States District Court, D. Kansas.
August 19, 1998.
*1218 Stephen E. Robison, Lyndon W. Vix, John T. Steere, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Franklin Brent Blalock.
Jack Focht, Foulston & Siefkin L.L.P., Wichita, KS, Stephen E. Robison, Lyndon W. Vix, John T. Steere, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Carrol Blalock.
Matthew W. Boddington, Michael George, Kansas Dept. of SRS, Topeka, KS, for Barbara Clark.
Donald A. Frigon, Frigon Law Firm, Dodge City, KS, Reid Stacey, Carl W. Ossmann, Social & Rehabilitation Services, Topeka, KS, Deborah Purce-Jones, Jones & Jones, Topeka, KS, Gregory A. Lee, Gehrt & Roberts, Chartered, Topeka, KS, for Kansas Dept. Social & Rehabilitation Services.
Donald A. Frigon, Frigon Law Firm, Dodge City, KS, Gregory A. Lee, Gehrt & Roberts, Chartered, Topeka, KS, for Kathleen Tellus.
Deborah Purce-Jones, Jones & Jones, Topeka, KS, for Gloria Markuly.
Gregory A. Lee, Gehrt & Roberts, Chartered, Topeka, KS, for Elaine Good.
Carl W. Ossmann, Social & Rehabilitation Services, Topeka, KS, for Carmita Grayson.

MEMORANDUM AND ORDER
MARTEN, District Judge.
This is an action brought under 42 U.S.C. § 1983 in which plaintiff alleges defendants, all employees of Kansas Social and Rehabilitation Services ("SRS") wrongfully failed to remove her from the home of her mother, where she was physically and sexually abused by her father and her mother's subsequent boyfriend. The matter is before the court on the defendants' motions to dismiss and/or for summary judgment. (Doc's 141, 149, 201, 231 and 232). The court has reviewed the parties' submissions and the relevant law and is prepared to rule.

I. Undisputed Facts
The following facts are undisputed or stated in the light most favorable to the plaintiff.[1]
The plaintiff, A.S., was born on April 21, 1985. Her parents are Brenda Summers and Rodney Summers. Brenda is mentally retarded, and Rodney is mentally limited. SRS received notice as early as 1985 that A.S. and her younger brother were being subjected to physical abuse by their parents. On June 2, 1987, a magistrate judge in Neosho County entered an order of informal supervision to be conducted by SRS. Brenda and Rodney retained custody of the two children.
Early in 1988, Rodney was charged in Neosho County with indecent liberties with a minor. The charge involved the sexual molestation of a young neighbor girl. After Rodney was charged, Brenda and the children moved to Wichita. The court in Neosho *1219 County issued an order continuing SRS supervision and transferring venue of the case to Sedgwick County.
On April 18, 1988, the Sedgwick County District Court ordered temporary custody of A.S. with SRS and continued informal supervision. The order provided in part that SRS was "granted permission to continue placement of said children in the home of Brenda Summers, mother, if such action is deemed to be appropriate." A.S. remained in the temporary custody of SRS until June 12, 1989.
On May 1988, Brenda told defendants Clark, Markuly and Tellus that she planned to reunite with Rodney, although she had already obtained a divorce. None of the defendants informed the court of this conversation. On June 30, another hearing was held, and the court ordered continued custody with SRS, with authority to place the children with Brenda. The order further provided that Brenda was to complete parenting classes, that visitation between Rodney and the children was to be supervised by SRS or a family member, and that marriage and/or family counseling would be required for Brenda and Rodney to reunite. Brenda and Rodney, as well as defendant Tellus, were present at the hearing.
In June 1988, Rodney moved in with Brenda and the children. None of the requirements established by the court had been met, and no attempt was made to have supervised visitation.[2] On a number of occasions, defendants were made aware that Rodney was alone with the children, "babysitting" at various times. Defendant Clark observed A.S. repeatedly masturbating, a behavior she had not noticed before Rodney's return. None of the defendants took any steps to see that the court order of supervised visitation was followed, except Tellus told Rodney he must move out of the house within two weeks. Rodney did not move out of the house until October, after which he did not return. In November 1988, he was convicted of aggravated sexual battery in Neosho County and was incarcerated. Plaintiff contends that between June 1988 and October 1988, Rodney repeatedly sexually molested A.S.
In January 1989, an order was entered providing for continued temporary custody of A.S. and her brother with SRS and placement of the children with Brenda.
On January 23, 1989, Brenda informed defendant Clark that she had a new boyfriend, Norman Douglas. On March 20, 1989, Norman told defendant Tellus that he was taking care of the children. On March 22, 1989, A.S. told defendant Clark that Norman had hit her on the head. Clark saw Norman yell at A.S.'s brother and pull his right ear "very hard." The incident was recorded, but no action was taken. On April 17, 1989, A.S. told defendant Clark that "daddy" touched her "private." There is evidence that A.S. referred to both Norman and Rodney as "daddy," and she did not say which she meant. When Clark asked which daddy, Norman responded, "It was Rodney."
On May 19, 1989, A.S. was examined by Dr. Katherine Melhorn, a sexual abuse specialist. Dr. Melhorn noted a concern that "something recent may have been happening" because A.S. was having nightmares and exhibiting other behaviors indicative of sexual abuse despite having been away from Rodney for several months. The physical examination could neither confirm nor rule out sexual abuse, "but certainly could be consistent with fondling or other non-forceful penetration." Dr. Melhorn recommended following up on therapy.
On June 12, 1989, Brenda's mother took A.S. and her brother to live with her. A.S. has not lived with Brenda since that date. She is currently in the custody of her maternal grandfather, Franklin Brent Blalock and his wife, Carrol Blalock.
Plaintiff alleges she was repeatedly sexually and physically abused by Norman Douglas between and January and June 1989. Plaintiff contends that as a result of the physical and sexual abuse she suffered, she is severely emotionally disturbed and is a danger to herself and others. Plaintiff contends her *1220 damages are a result of defendants' failure to remove her from her mother's home before June 1989.

II. Standard for Summary Judgment
The standards governing the consideration of a motion for summary judgment are well established. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial  whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. 2548. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials negating the opponent's claim." Id. 477 U.S. at 323, 106 S.Ct. 2548 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. Anderson, 477 U.S. at 254, 106 S.Ct. 2505.

III. Analysis
Plaintiff seeks damages and injunctive relief under 42 U.S.C. § 1983, alleging that the defendants' failure to remove her from an abusive environment violated her substantive and procedural due process rights and other constitutional rights. She has brought suit against the defendants in the individual and official capacities. Plaintiff concedes that the Eleventh Amendment bars her damage claims against the defendants in their official capacities. Therefore the court grants summary judgment as to that portion of plaintiff's § 1983 claim.

A. Substantive Due Process
Next, the individual defendants argue they are entitled to summary judgment because the plaintiff did not have a substantive due process right to protection from harm caused by third parties. The leading case in this area is DeShaney v. Winnebago Cty. Department of Soc. Serv's, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In that case, social service workers investigated allegations of child abuse and even obtained an order placing the plaintiff child in the temporary custody of a hospital. Id. 489 U.S. at 192, 109 S.Ct. 998. However, the child was returned to his father, and social services monitored the situation, noting suspicious injuries. Id. , 489 U.S. at 192-93, 109 S.Ct. 998. Eventually, the plaintiff's father beat him so severely that the plaintiff was in a coma for a time, had to undergo brain surgery, and was left so brain damaged he was profoundly retarded. Id. 489 U.S. at 193-94, 109 S.Ct. 998. The Supreme Court held the social services workers were under no duty to protect the plaintiff from his father's abuse. Id. 489 U.S. at 201, 109 S.Ct. 998. The court started with the premise that the due process clause limits state action; it is not a guarantee of a person's safety. Id. 489 U.S. at 195, 109 S.Ct. 998. Due process *1221 generally does not impose on the state a duty to protect a person from harm caused by private actors. Id. 489 U.S. at 195, 109 S.Ct. 998. Such a duty does arise if the state has a "special relationship" with the plaintiff. Id. 489 U.S. at 197, 109 S.Ct. 998. When the state takes a person into its custody and holds him there against his will, then the Constitution imposes a duty to assume some responsibility for the person's safety and general well-being. Id. 489 U.S. at 199-200, 109 S.Ct. 998. No duty to protect arises from knowledge of danger or expressions of intent to help, but only from the limitations the state has placed on the person's freedom to act on his own behalf. Id. 489 U.S. at 200, 109 S.Ct. 998. Because the plaintiff in DeShaney was in his father's custody rather than state custody at the time he was injured, the state was not liable for his injuries. The Court considered it irrelevant that the plaintiff had been in temporary state custody. Id. 489 U.S. at 201, 109 S.Ct. 998. The state does not become the permanent guarantor of a person's safety by having once offered him shelter. Id. The court noted that in returning the plaintiff to his father's custody, the state placed him in no worse position than he had been in absent its intervention. Id.
Since DeShaney, the Tenth Circuit has held that a child in foster care has a substantive due process right to protection from third parties in the foster home. Yvonne L. v. New Mexico Dep't of Human Services, 959 F.2d 883 (10th Cir.1992). In that case, plaintiff Yvonne L. was in the legal and physical custody of the state, placed in a foster care facility, where she allegedly was sexually assaulted by another child at the home. Id. 959 F.2d at 885. The court held that a child in foster care had a due process right, which was clearly established by 1985, to a degree of protection by the state from abuse in the foster home. Id. 959 F.2d at 893.
This case lies somewhere between DeShaney and Yvonne L. In this case, the state had legal custody of the plaintiff, but physical custody remained with her mother. The questions before the court, then, are whether this situation constitutes a special relationship entitling A.S. to state protection from harm by third parties and, if so, whether this right was clearly established in 1988 and 1989, when the alleged abuse occurred, so as to defeat the defense of qualified immunity.
The court concludes that legal custody without physical custody is insufficient to create a "special relationship." The only case presenting a similar situation is Wooten v. Campbell, 49 F.3d 696 (11th Cir.1995). In that case, after the child's father had kidnapped him, the court gave the state's social service agency legal custody with authority to place the child. Id. 49 F.3d at 698. The agency placed the child with his mother and allowed the father visitation. Id. The father kidnapped the child again, eventually killing him, then committing suicide. Id. The Eleventh Circuit Court of Appeals held that this situation is more like DeShaney than like the foster care cases, such as Yvonne L. Id. 49 F.3d at 699. When the state puts a child in foster care, it chooses the person who meets the child's day-to-day needs, such as food, clothing and shelter. Id. However, when the state has only legal custody, and leaves the child in the physical custody of a parent, the parent retains responsibility for feeding, clothing and sheltering the child. Id. The parent, and not the state, maintains dominion and control over the child and is in a position to protect the child from harm. Id. 49 F.3d at 700.
This court agrees with the court's analysis in Wooten. The Tenth Circuit has stressed that it is the state's taking and holding a person against her will which creates a special relationship. Yvonne L., 959 F.2d at 892. In that situation, the person is not able to care for her own needs or, in the case of a child, the state prevents the parent from taking care of the child's needs. However, where the state merely has legal custody, the parent who retains physical custody has the power to protect the child from harm. For example, in this case it was Brenda Summers who decided to let Rodney Summers and Norman Douglas stay at her home and have access to her children.[3]
*1222 Moreover, it is not clear, despite plaintiff's argument, that the state court's order gave SRS the authority to remove A.S. from her mother's home without further proceedings. The order provided for temporary custody, but also for "informal supervision." See K.S.A. §§ 38-1543 & -1544. The order stated that SRS could place the children with their mother "if appropriate," but the temporary custody statute provides that the children are not to be removed from parental custody absent a finding by the court that "reasonable efforts have been made to prevent or eliminate the need for removal of the child or that an emergency exists which threatens the safety of the child and requires the immediate removal of the child." K.S.A. § 38  1543(i). No such finding was made in this case in conjunction with the award of temporary custody. In fact, throughout the Kansas Code for Care of Children, emphasis is placed on keeping children with their natural parents when possible. See e.g., K.S.A. §§ 38-1528(a), -1543(i), -1563.
It is well established that parents have a liberty interest, protected by the due process clause, in custody and control of their children. Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir.1993); In the Interest of Cooper, 230 Kan. 57, 63, 631 P.2d 632 (1981). Government entities and officials have been sued under § 1983 for alleged improper removal of children from the home. K.H. v. Morgan, 914 F.2d 846, 853 (7th Cir.1990) (holding child welfare workers can be liable for placing child in abusive foster home). See also J.B. v. Washington County, 127 F.3d 919, 927 (1997). To give the child a cause of action when she is left with her parent too long would "place child welfare workers on a razor's edge  damned if they return the child to its family and damned if they retain custody of the child or place him in a foster home or institution." K.H., 914 F.2d at 853. As the Kansas Supreme Court has stated, "[i]n caring for children within its custody, the government and its agents are continually called upon to make delicate and complex judgments, often weighing and balancing individual risks." Bolyard v. Kansas Dep't of Social & Rehab. Serv's, 259 Kan. 447, syl. ¶ 7, 912 P.2d 729 (1996) (applying discretionary function exception under Kansas Tort Claims Act).
The court also rejects plaintiff's argument that defendant's are liable under a "danger creation" theory. By leaving A.S. with her mother, the defendants did not create or exacerbate any danger to A.S. She was in "no worse position than [she] would have been had [they] not acted at all." DeShaney, 489 U.S. at 201, 109 S.Ct. 998. Therefore, plaintiff cannot make a claim for a violation of substantive due process under the facts alleged in this case.
Furthermore, there has not been a case in this or any other circuit holding that a child in the state's legal custody and the parent's physical custody has a substantive due process right to protection from parental abuse. Therefore if plaintiff in fact has such a right, it was not clearly established by 1989. As the Eleventh Circuit noted, the foster care cases are distinct enough that they do not clearly establish the right to protection in this situation. Wooten, 49 F.3d at 698 n. 2. Therefore, even if defendants' conduct in this case violated a substantive due process right, the defendants are entitled to qualified immunity.

B. Procedural Due Process
Plaintiff also alleges a violation of her right to procedural due process. Again, plaintiff relies on a number of cases involving abusive foster care situations, such as Meador v. Cabinet for Human Resources, 902 F.2d 474 (6th Cir.1990) (discussing Kentucky statute for child welfare) and Taylor By & Through Walker v. Ledbetter, 818 F.2d 791 (11th Cir.1987)(discussing Georgia statute). In those cases, the courts held children in foster care have a liberty interest, pursuant to those statutory schemes, in protection from abuse. Meador, 902 F.2d at 476; Taylor, 818 F.2d at 798.
However, outside the foster care situation, the courts have held children do not have a *1223 protected interest in the procedures for reporting and investigating abuse. In Tony L. By & Through Simpson v. Childers, 71 F.3d 1182 (6th Cir.1995), the court considered the same statutory scheme involved in Meador. Id. 71 F.3d at 1187. However, rather than being in foster care, the plaintiff children were in their mother's home and allegedly suffered abuse at the hands of their mother and her several boyfriends. Id. 71 F.3d at 1184. The county had received numerous reports of abuse, but did not take the boys out of the home for approximately six years. Id. The court held Kentucky statute did not give plaintiffs a liberty interest in its enforcement. Id. 71 F.3d at 1185-87.
If a state statute puts substantive limitations on official discretion and mandates a particular outcome under certain criteria, then a liberty interest is created. Id. 71 F.3d at 1185 (citing Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)). By contrast, if the state creates a mandatory procedure, but does not explicitly guarantee a particular substantive outcome, no protected interest is created. Id. Here, plaintiff complains that the defendants did not write and file intake reports when the statute called for them and did not report certain events to the state court. However, the act of filing an intake report or providing information to a court is not a substantive outcome. The Kansas statute does not prescribe or guarantee a particular substantive outcome under the circumstances of this case. K.S.A. §§ 38-1501 et. seq. A person does not have a protected interest in procedures per se. Olim, 461 U.S. at 250, 103 S.Ct. 1741. Therefore, the statutory right to an investigation is not protected by the due process clause. Doe by Nelson v. Milwaukee County, 903 F.2d 499, 502 (7th Cir.1990).
Furthermore, as discussed above, the statutory scheme in this case represents an attempt to balance sometimes competing interests. Chief among these interests are the safety of Kansas children, and the maintenance of the biological family. See Tony L., 71 F.3d at 1187. Far from mandating particular outcomes, the statute vests discretion in the secretary to place the child in the parents' home even when the secretary has legal custody. K.S.A. § 38-1543(g). The statute also provides that a child is not to be removed from parental custody until a court finds "`reasonable efforts' have been made to prevent or eliminate the need for removal...." § 38-1543(i). Moreover, contrary to plaintiff's argument, the state court order relevant to this case did not require removal of plaintiff from her mother's home if there was any failure to comply with the court's conditions of placement.
Finally, the court is guided by the Kansas courts, which have consistently held that the Kansas Code for the Care of Children does not impose a duty to any particular person, but only to the public at large. P.W. v. Kansas Dep't of Social and Rehab. Serv's, 255 Kan. 827, 835, 877 P.2d 430 (1994) (no duty to child abuse victim or parents); Burney v. Kansas Dep't of Social and Rehab. Serv's, 23 Kan.App.2d 394, syl. ¶ 1, 398, 931 P.2d 26 (1997)(no duty to alleged child abuser).
For these reasons, the court concludes the plaintiff did not have a liberty or property interest in the enforcement of the Kansas Code for the Care of Children. Therefore, her claim of procedural due process violation fails.

C. Remaining Federal Claims
In Count I, plaintiff also alleges violations of her fifth amendment due process rights and her right under the eighth amendment to be free from cruel and unusual punishment. A claim under the fifth amendment due process clause is available only against federal officials, not state officials. LaBoy v. Zuley, 747 F.Supp. 1284, 1286 (N.D.Ill.1990). Plaintiff has not made a claim against any federal official in this case. The eighth amendment "cruel and unusual punishment" clause applies only to punishments exacted upon those convicted of crimes. Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). This case does not arise out of punishment for criminal conduct.
Count II of plaintiff's second amended complaint is based on alleged violations of the Child Abuse Prevention and Treatment *1224 Act ("CAPTA"), 42 U.S.C. § 5101 et seq. The court agrees with the majority of courts, including the only appellate courts to address the issue, that CAPTA does not create a private cause of action. Doe v. District of Columbia, 93 F.3d 861 (D.C.Cir.1996); Tony L. v. Childers, 71 F.3d 1182 (6th Cir.1995) (McKay, J., 10th Cir. Judge, sitting by designation); Eric L. v. Bird, 848 F.Supp. 303 (D.N.H.1994); Baby Neal v. Ridge, No. 90-2343, 1995 WL 728589 (E.D.Pa. Dec. 7, 1995). But see Marisol A. v. Giuliani, 929 F.Supp. 662 (S.D.N.Y.1996); Jeanine B. v. Thompson, 877 F.Supp. 1268 (E.D.Wis.1995). The requirements of CAPTA are too vague to create an enforceable right. Tony L., 71 F.3d at 1189. CAPTA mandates that states, in order to receive federal funds, have in place procedures for investigation of child abuse and protection of children, 42 U.S.C. § 5106a(b)(2), but it does not mandate particular procedures or protective steps to be taken. Id. There is no allegation in this case that the State of Kansas has not put such procedures in place, but only that the procedures have not been followed in this case. See Doe, 93 F.3d at 866; Eric L., 848 F.Supp. at 313. For these reasons, the court grants summary judgment on plaintiff's claim under CAPTA.
Therefore, the defendants are entitled to summary judgment on the plaintiff's remaining federal claims.

D. State Law Claim
In Count II of the second amended complaint, plaintiff also alleges a cause of action for negligence under the Kansas Tort Claims Act, K.S.A. §§ 75-6101 et seq. Some, but not all, defendants have moved for dismissal or summary judgment on plaintiff's state law claim. The plaintiff did not respond to these arguments. Because the court has only pendent jurisdiction over the state claim and has disposed of the plaintiff's federal claims, the court orders the plaintiff within ten (10) days to show cause why the court should retain jurisdiction over the state law claim. Furthermore, the plaintiff shall show cause why, if this court retains jurisdiction, the claims should not be dismissed under the Kansas Supreme Court's holding in Bolyard v. Kansas Dep't of Social & Rehab. Serv's, 259 Kan. 447, 912 P.2d 729 (1996). The defendants shall have five (5) days in which to reply to the plaintiff's response to the show cause order.
IT IS BY THIS COURT THEREFORE ORDERED that defendants's motion to dismiss and/or for summary judgment (Doc's 141, 149, 201, 231 and 232) are hereby granted in part.
IT IS FURTHER ORDERED that the plaintiff shall have ten (10) days in which to show cause why the state law claim should not be dismissed, and the defendants shall have five (5) days in which to reply to plaintiff's response to the show cause.
NOTES
[1] For purposes of deciding these motions, the court has taken as true all of plaintiff's factual allegations. However, for the sake of brevity, the court has broadly paraphrased those allegations rather than recite them with the level of detail in the briefs.
[2] Defendant Clark testified she believed Brenda was entitled to supervise Rodney's visits under the court order.
[3] Brenda's mental limitations and apparent poor judgment are immaterial as they were not created by SRS any more than Joshua DeShaney's father's violence was caused by the state agency in that case.