NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0365n.06

No. 10-5391

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 31, 2011*

LEONARD GREEN, Clerk

SANDI D. JACKSON, as next friend and parent of
Keeley A. Jackson, a minor child under the age of
eighteen years old,

        Plaintiff-Appellant,

v.

RASHONDALYN NIXON; CHRISTY BLAZER,

        Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

O P I N I O N

BEFORE:    COOK, McKEAGUE, and GRIFFIN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Sandi D. Jackson filed a complaint, pursuant to 42 U.S.C.

§ 1983, on behalf of her minor daughter, Keely A. Jackson, alleging a violation of due process for

the failure to follow certain procedures established by the Tennessee Department of Children's

Services ("DCS") by DCS case worker Rashondalyn Nixon and DCS supervisor Christy Blazer

(collectively "defendants"). Defendants filed a motion to dismiss, which the district court granted,

finding that Jackson had failed to state a claim. We now affirm.

**I. BACKGROUND**

According to Jackson's amended complaint, Keely spent the night with her father, Mitchell

Lanphere, on July 24, 2009. The next day at gymnastics practice she became "extremely upset and

distraught" and told her gymnastics coach "that she would not go back to her father's house even

though it was his visitation weekend." Later, Keely informed her mother that Lanphere "had engaged in inappropriate conduct with her." As a result, when Lanphere came to pick Keely up from Jackson's home, Jackson refused to allow visitation. Jackson also filed an emergency motion to suspend visitation and sought a temporary restraining order, which was initially granted by the juvenile court but subsequently dissolved at a hearing when it also denied Jackson's motion.

Keely also informed her therapist of the alleged abuse, who in turn reported the allegations to Jackson and the Sumner County Child Protection Service. An interview was conducted with Blazer, Nixon, and other staff," following which a "safety plan" was instituted that stopped unsupervised visitation between Keely and Lanphere. Four days later, Nixon visited Keely at school and read her the order from the hearing at which the TRO was dissolved. Nixon asked Keely for a response to the order and, based on this response, she accused Keely of not telling the truth. Shortly thereafter, Nixon and Blazer determined that Keely's case was closed and informed Lanphere, who then "file[d] a motion to have Keely declared despondent [sic] and neglected." The juvenile court held a hearing on the motion, at which Nixon admitted to the court that "she had not followed DCS standard procedure for investigating allegations of child abuse." Nonetheless, she asserted that she would still recommend that visitation with Lanphere resume. Nixon also testified at a second hearing before the juvenile court that Lanphere should have "unrestricted visitation" with Keely. According to Jackson, Lanphere was then "emboldened" to file a motion for change of custody.

Jackson filed a § 1983 complaint on behalf of herself and Keely, alleging a violation of due process under the Fourteenth Amendment by Nixon and Blazer. Defendants then filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The district

court granted the motion, concluding that Jackson failed to state a procedural due process claim under the Due Process Clause itself or Tennessee law. *Jackson v. Nixon*, No. 3:09-CV-0954, 2010 WL 599189, at *3–5 (M.D. Tenn. Feb. 17, 2010). Jackson filed a timely appeal.

## II. ANALYSIS

We review a district court's dismissal of a complaint for failure to state a claim de novo. *See Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008). In undertaking this review, "[w]e must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts consistent with its allegations that would entitle it to relief." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477–78 (6th Cir. 2010). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). In her complaint, Jackson asserted a violation of her procedural due process rights.[1] "'In order to establish a procedural due process claim, a plaintiff must show that

---

[1]The district court explained in a footnote that Jackson did not specify whether she was asserting a substantive or procedural due process claim, but noted that this court "has construed strikingly similar factual allegations" as claiming a procedural due process violation, because a substantive due process claim would be foreclosed by *DeShaney v. Winnebago County Department*

(1) [she] had a life, liberty, or property interest protected by the Due Process Clause; (2) [she] was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the [protected] interest.'" *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (quoting *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir. 2006)). At issue in the instant case is a liberty interest, which "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted).

On appeal, Jackson first argues that the district court read *DeShaney v. Winnebago County Department of Social Serv*ices, 489 U.S. 189 (1989) "far too narrow[ly]," asserting that "[e]ven a cursory reading of the complaint shows that the *gravaman* of [] Jackson's claim" is not a complaint against a "private actor" but against "the government itself." However, while Jackson alleges a failure by defendants to adhere to DCS regulations, she claims that had defendants properly adhered to the regulations, Keely "would not still be subject to exposure to her father without supervision." Thus, Jackson is claiming that defendants should have had "an affirmative obligation" under the Due Process Clause to protect Keely from any harm by her father, a private actor, that could have occurred during visitation, a claim that is expressly foreclosed by *DeShaney*. *See* 489 U.S. at 195.

Jackson also argues that her complaint states a claim under Tennessee law, asserting again that the district court construed the holding in *Tony L. ex rel. Simpson v. Childers*, 71 F.3d 1182 (6th

---

*of Social Serv*ices, 489 U.S. 189 (1989). *Jackson*, 2010 WL 599189, at *3 n.7 (citing *Tony L. ex rel. Simpson v. Childers*, 71 F.3d 1182, 1184 n.1 (6th Cir. 1995)). On appeal, Jackson does not challenge the district court's characterization of her claim. Thus, any such argument is waived.

Cir. 1995) ,"far too narrowly." In *Tony L.*, this court explained that "[s]tate-created liberty interests arise when a state places 'substantive limitations on official discretion.'" *Id.* at 1185 (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 462 (1989)). A state places substantive limitations on official discretion when it establishes "substantive predicates to govern official decision-making and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Ky. Dep't of Corr.*, 490 U.S. at 462 (internal quotation marks and citation omitted). Moreover, "[t]he state statutes or regulations in question also must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present." *Tony L.*, 71 F.3d at 1185 (internal quotation marks omitted). Where state-created procedural rights "do not guarantee a particular substantive outcome," these rights "are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." *Id.*

Jackson argues that her complaint did demonstrate that a particular substantive outcome was required. She claims that the substantive outcome required by the DCS regulations was "an investigation in which the discretion of DCS officials <u>was not abused</u>." However, Section 14.7 of the DCS Administrative Policies and Procedures, which governs the classification of a child protective services investigation case, requires only that a case must be classified within thirty days after receipt of a report and a determination must be made about whether "to close the case, provide services, refer to community providers for ongoing services, or transition[] [the case] to a Family Service Worker." Tenn. DCS Admin. Policies and Procedures § 14.7. Although case workers are required to complete certain investigative tasks in order to classify a case, they are given discretion

when making that classification determination. Section 14.7 states that "[a] report of child abuse by the alleged perpetrator *may* be classified as 'indicated' if there is [a] preponderance of evidence, in light of the entire record, which indicates the individual committed physical, severe or child sexual abuse . . . ." *Id.* at § 14.7A (emphasis added). Although proof of certain factors "may constitute preponderance of evidence," a case worker simply is not required to make any particular classification, but instead *may* do so, in her discretion, after evaluating the entire record. *Id.*

Thus, as this court previously explained in *Tony L.*, "[t]he claim of a state-created liberty interest fails [] because no particular substantive outcome is mandated." 71 F.3d at 1186. The requirement that certain investigative actions be taken "only gives plaintiffs an expectation of receiving a certain process." *Id.* However, "[a]n expectation that some sort of action will be taken is not enough. Rather, a plaintiff must have an expectation that a particular result will follow from a particular, required action. This [administrative policy] simply does not provide [Jackson] with such an expectation." *Id.* As a result, Jackson has failed to state a claim for a violation of her due process rights under the Due Process Clause itself or under Tennessee state law.

### III. CONCLUSION

Accordingly, we AFFIRM the district court's order granting defendants' motion to dismiss Jackson's complaint for failure to state a claim.